# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

LENELLE GRAY,                      :

          Plaintiff,        :        CIVIL ACTION NO. 1:09-2082

   V.                             :              (KANE, C.J.)
                              (MANNION, M.J.)

B.A. BLEDSOE, and                  :
GEORGINE FUJIMOTO,

                   :

          Defendants.

## <u>REPORT AND RECOMMENDATION</u>[1]

Pending before the court is defendant Bledsoe and defendant Fujimoto's motion to dismiss or, in the alternative, for summary judgment. (Doc. No. 22). For the reasons set forth below, the court recommends that the defendants' motion be **GRANTED.**

## I.    FACTS[2] AND PROCEDURAL BACKGROUND

On November 7, 2008, plaintiff alleges that defendant Fujimoto, who was standing at the entrance to his cell, asked him if he was interested in

---

[1] For the convenience of the reader of this document in electronic format, hyperlinks to the court's record and to authority cited herein have been inserted. No endorsement of any provider of electronic resources is intended by the court's practice of using hyperlinks.

[2] The facts as set forth here are taken from plaintiff's complaint. (Doc. No. 13).

participating in a program for sex offenders in Arizona.[2] (Doc. No. 13 at 1).

Plaintiff allegedly responded that he was not interested in the program because he was not a sex offender. *Id.* at 1-2. Defendant Fujimoto allegedly stated again that she thought plaintiff might be interested in the program. *Id.* at 2. Plaintiff again stated that he was not interested in the program because he had children and was not a sex offender. *Id.* The plaintiff also stated that he did not appreciate defendant Fujimoto "trying to play him." *Id.* At that point, defendant Fujimoto allegedly got hysterical and stated, "I'm not trying to play you, you may not think so, but I'm trying to get you help for your problem. The behavior you do is sexually offensive and you're a dangerous sexual predator who needs to be in that program, but its up to you." *Id.* Defendant Fujimoto then walked away. *Id.*

Plaintiff alleges that, during that conversation, defendant Fujimoto allegedly made false accusations as well as slanderous remarks which were heard by other inmates and correctional officers. *Id.* As such, plaintiff filed an administrative remedy. *Id.* With respect to the first BP-8 he filed, he alleges that after several weeks, he did not receive a response. *Id.* When plaintiff

---

[2] Plaintiff was incarcerated at the United States Penitentiary at Canaan ("USP Canaan").

inquired about it, he was told it must have gotten lost. *Id.* Consequently, plaintiff filed another BP-8, and this time the plaintiff received a timely response. *Id.* Plaintiff then filed a BP-9 that was subsequently denied, without being addressed on the merits, due to alleged interference by staff in order to prevent plaintiff from pursuing this action. *Id.* Furthermore, plaintiff alleges that defendant Fujimoto threatened him that he would wish he had never filed an administrative remedy on her.[3] *Id.*

In February of 2009, defendant Fujimoto told plaintiff that he would be going to the Special Management Unit ("SMU") at United States Penitentiary at Lewisburg ("USP Lewisburg"). *Id.* On April 1, 2009, while plaintiff was packing his property for his transfer at Receiving and Discharge, defendant Fujimoto began to taunt the plaintiff by stating she had some friends at USP Lewisburg who were waiting for him, and that she told them to take really good care of him. *Id.* In addition, defendant Fujimoto stated that she made sure the plaintiff would be going to the SMU at USP Lewisburg and that she could not wait for him to get there. *Id.*

Based on the foregoing, plaintiff filed the instant *Bivens*[4] action claiming

---

[3] At this point, it was towards the end of December of 2008.

[4] *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971).

3

that (1) defendant Fujimoto used her authority to secure this retaliatory transfer to USP Lewisburg due to the administrative remedies plaintiff filed, and (2) he does not meet the criteria to be placed in the SMU. (Doc. No. 1).

On April 9, 2010, the defendants filed a motion to dismiss or, in the alternative, for summary judgment, (Doc. No. 22), that was accompanied by a brief in support, (Doc. No. 25) and a statement of material facts, (Doc. No. 24). Despite having been given time to do so, as of the date of this Report and Recommendation, the plaintiff has failed to oppose the defendants' motion. As such, the motion is ripe for our consideration.

## II.    MOTION TO DISMISS

Defendant Bledsoe argues that plaintiff's complaint should be dismissed against him.

### A.    Standard of Review

Defendant Bledsoe's motion to dismiss is brought pursuant to the provisions of Fed. R. Civ. P. 12(b)(6). This rule provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no claim has been stated, *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir.

4

2005), and dismissal is appropriate only if, accepting all of the facts alleged in the complaint as true, the plaintiff has failed to plead "enough facts to state a claim to relief that is plausible on its face," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1974 (2007) (abrogating "no set of facts" language found in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). The facts alleged must be sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. 544, 127 S. Ct. at 1965. This requirement "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of" necessary elements of the plaintiff's cause of action. *Id.* Furthermore, in order to satisfy federal pleading requirements, the plaintiff must "provide the grounds of his entitlement to relief," which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (brackets and quotations marks omitted) (quoting *Twombly*, 550 U.S. 544, 127 S. Ct. at 1964-65).

In considering a motion to dismiss, the court generally relies on the complaint, attached exhibits, and matters of public record. *Sands v. McCormick*, 502 F.3d 263 (3d Cir. 2007). The court may also consider "undisputedly authentic document[s] that a defendant attaches as an exhibit

to a motion to dismiss if the plaintiff's claims are based on the [attached] documents." *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993). Moreover, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002). However, the court may not rely on other parts of the record in determining a motion to dismiss. *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994).

## B.    Defendant Bledsoe

Under §1983 and *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971)[5],

> "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia [or the Federal government], subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . ."

---

[5] A civil rights claim brought under *Bivens* is the federal counterpart to an action brought under §1983. The same legal principles govern both §1983 and *Bivens* claims. *Brown v. Philip Morris Inc.*, 250 F.3d 789, 800 (3d Cir. 2001); *Paton v. LaPrade*, 524 F.2d 862, 871 (3d Cir. 1975).

42 U.S.C. §1983. Neither §1983 nor *Bivens* creates any substantive rights. Rather, *Bivens* allows "a citizen suffering a compensable injury to a constitutionally protected interest [to] invoke the general federal-question jurisdiction of the district court to obtain an award of monetary damages against the responsible federal official." *Butz v. Economou*, 438 U.S. 478, 504 (1978). To state a claim under *Bivens*, the plaintiff must show that the defendant, acting under color of Federal law, deprived him of a right secured by the Constitution or laws of the United States. *Brown*, 250 F.3d at 800.

Individual liability in a civil rights action is personal in nature, and a defendant is liable only if he was personally, affirmatively involved in the alleged malfeasance. *C.N. v. Ridgewood Bd. of Educ.*, 430 F.3d 159, 173 (3d Cir. 2005); *Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1294 (3d Cir. 1997), abrogated in part on other grounds by *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006) and by *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 753-54 (1998) (citing *Rhode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). Further, "[b]ecause vicarious liability is inapplicable to *Bivens* and §1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the constitution." *Ashcroft v. Iqbal*, – U.S. –, 129 S. Ct. 1937, 1948 (2009)

(collecting cases).

Defendant Bledsoe seeks dismissal of the complaint against him on the ground that plaintiff has not set forth any personal allegations of wrongdoing, and therefore he could not have violated plaintiff's constitutional rights. The court agrees. A viable *Bivens* claim requires allegations of personal involvement on the part of each defendant. *See Iqbal,*129 S. Ct. at 1948. As plaintiff has failed to set forth any allegations of personal involvement on the part of defendant Bledsoe, the court recommends that defendant Bledsoe's motion to dismiss be granted. See (Doc. No. 13).

## III. MOTION FOR SUMMARY JUDGMENT

Defendant Fujimoto raises various arguments as to why she is entitled to summary judgment.

### A. Standard of Review

Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Turner v.*

*Schering-Plough Corp.*, 901 F.2d 335, 340 (3d Cir. 1990). A factual dispute is genuine if a reasonable jury could find for the non-moving party, and is material if it will affect the outcome of the trial under governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Aetna Casualty & Sur. Co. v. Ericksen*, 903 F. Supp. 836, 838 (M.D. Pa. 1995). At the summary judgment stage, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249; *see also Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (a court may not weigh the evidence or make credibility determinations). Rather, the court must consider all evidence and inferences drawn therefrom in the light most favorable to the non-moving party. *Andreoli v. Gates*, 482 F.3d 641, 647 (3d Cir. 2007).

To prevail on summary judgment, the moving party must affirmatively identify those portions of the record which demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323-24. The moving party can discharge the burden by showing that "on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party." *In re Bressman*, 327 F.3d 229, 238 (3d Cir.

9

2003); *see also* Celotex, 477 U.S. at 325. If the moving party meets this initial

burden, the non-moving party "must do more than simply show that there is

some metaphysical doubt as to material facts," but must show sufficient

evidence to support a jury verdict in its favor. *Boyle v. County of Allegheny,*

*139 F.3d 386, 393 (3d Cir. 1998)* (quoting *Matsushita Elec. Indus. Co. v.*

*Zenith Radio*, 475 U.S. 574, 586 (1986)). However, if the non-moving party

"fails to make a showing sufficient to establish the existence of an element

essential to [the non-movant's] case, and on which [the non-movant] will bear

the burden of proof at trial," Rule 56 mandates the entry of summary judgment

because such a failure "necessarily renders all other facts immaterial."

*Celotex Corp.*, 477 U.S. at 322-23; *Jakimas v. Hoffman La Roche, Inc.*, 485

*F.3d 770, 777 (3d Cir. 2007)*. Where, for example, the non-movant opposes

summary judgment merely by standing on its own pleadings, and offers no

other evidence in regard to a contested material fact, then the movant's

motion will be granted. *See* *First Nat. Bank of Ariz. v. Cities Serv. Co.*, 391

*U.S. 253, 289 (1968)* ("What Rule 56(e) does make clear is that a party

cannot rest on the allegations contained in his complaint in opposition to a

properly supported summary judgment motion made against him."); *Arnold*

*Pontiac-GMC, Inc. v. General Motors Corp.*, 786 F.2d 564, 575 (3d Cir. 1986).

10

### B.    Statement of Facts[6]

Plaintiff Gray was incarcerated at USP Canaan from May 7, 2008 through April 2, 2009. *See* Defs.' Ex. 1-A, (Doc. No. 24-2 at 14). During plaintiff's incarceration at USP Canaan, he received nine Incident Reports. *See* Defs.' Ex. 1-C, (Doc. No. 24-3 at 1-6).

Incident Report # 1741549

On June 7, 2008, Gray followed around, and stared at a female recreation specialist, despite a direct order to stop. *See* Defs.' Ex. 1-D, (Doc. No. 24-3 at 8-11). Specifically, the female recreation specialist stated, "Inmate Gray's behavior was very unpredictable and made me feel very uncomfortable. As I had to keep inmate Gray in direct supervision due to his unusual behavior, I was unable to fully supervise the other inmate in the recreation area." (Doc. No. 24-3 at 10).

The DHO concluded that plaintiff Gray committed the prohibited act of Conduct which Disrupts or Interferes with the Security or Orderly Running of a BOP Facility, and that Gray's actions were contemptuously rude and

---

[6] Contrary to Local Rule 56.1, the plaintiff has failed to file a separate, short and concise statement of the material facts, responding to the defendant's statement of material facts.  As such the defendant's facts are deemed to be admitted.

possibly predaceous as they threatened the ability of a staff member to carry out his duties and effectively deal with inmates in the assigned area. *Id.* Consequently, the plaintiff received sanctions that included disallowance of good conduct time, disciplinary segregation, and loss of commissary and telephone privileges. *Id.*

Incident Report # 1767596

On August 16, 2008, a staff member at USP Canaan observed plaintiff Gray "standing in the open doorway of [a] cell stroking his erect penis with his hand while looking directly at me." *See* Defs.' Ex. 1-E, (Doc. No. 24-3 at 19-21). When Gray appeared before the DHO concerning this Incident Report, he admitted that he had committed the prohibited acts of Engaging in a Sexual Act and Indecent Exposure. *Id.* at 19-20. Consequently, the plaintiff received sanctions that included disallowance of good conduct time, disciplinary segregation, loss of visiting, commissary, recreation and telephone privileges, as well as a recommendation for a disciplinary transfer. *Id.* at 20-21. In addition, the DHO described Gray's actions as predaceous, menacing, extremely offensive, disruptive and egregious as the kind of behavior Gray exhibited on August 16, 2008 had resulted in serious confrontations in the past. *Id.* at 21.

<u>Incident Report # 1772851</u>

On August 29, 2008, a female senior officer reported that, "while picking up trays on the upper B range...Gray was standing at the window of cell 250 with his penis exposed. Inmate Gray was masturbating as I opened the food trap to retrieve his food trays." *See* Defs.' Ex. 1-F, (Doc. No. <u>24</u>-3 at 27). The DHO concluded that plaintiff had committed the prohibited act of Engaging in Sexual Acts, and that Gray's actions on August 28, 2008 were willfully insubordinate, defiant, predaceous, menacing, extremely offensive, disruptive and egregious. *Id.* at 28. Consequently, plaintiff received sanctions that included disallowance of good conduct time, disciplinary segregation, loss of visiting, commissary, and telephone privileges, impounding of personal property, and a recommendation for a disciplinary transfer (reaffirmed recommendation from a previous sanction). *Id.* at 27.

<u>Incident Report # 1796106</u>

On November 2, 2008, plaintiff Gray refused a direct order to cuff up and return to his cell because he claimed that he was entitled to five more minutes in the SHU law library. *See* Defs.' Ex. 1-G, (Doc. No. <u>24</u>-4 at 7). Plaintiff Gray submitted to restraints approximately thirty minutes after the order was first given. *Id.* at 8. As such, an Incident Report was issued that

charged plaintiff with Refusing to Obey an Order from any Staff Member. *Id.*
The DHO concluded that plaintiff did commit that prohibited act, and that the
plaintiff's actions threatened the ability of a staff member to carry out his
duties and effectively deal with inmates in the assigned area. *Id.* at 8-9.
Consequently, plaintiff was sanctioned to disallowance of good conduct time,
disciplinary segregation, and loss of telephone and commissary privileges. *Id.*
at 9._

        Incident Report # 1799093

        On November 11, 2008, a female corrections officer was conducting
rounds when she saw plaintiff Gray stroking his erect penis with his right
hand. *See* Defs.' Ex 1-H, (Doc. No. 24-4 at 16). As such, she gave plaintiff
Gray a direct order to stop his behavior. *Id.* In response to the female officer's
direct order to stop masturbating, plaintiff Gray continued his behavior while
laughing hysterically and stated, "Why are you taking it personally?" *Id.*

        The DHO concluded that plaintiff committed the prohibited acts of
Engaging in a Sexual Act and Refusing to Obey an Order of Any Staff
Member, and that Gray's behavior was repetitive, willfully insubordinate and
defiant. *Id.* at 17. Consequently, plaintiff received sanctions that included
disciplinary segregation, disallowance of good conduct time, loss of visiting,

telephone and commissary privileges, as well as impounding of property, and a recommendation for a disciplinary transfer as plaintiff Gray demonstrated a need for greater security and a defiant disregard for institution rule. *Id.*

Incident Report # 1805613

On November 29, 2008, plaintiff Gray failed to stand for count when ordered by a staff member to do so. *See* Defs.' Ex 1-I, (Doc. No. 24-4 at 25). The DHO concluded that plaintiff committed the prohibited act of Failing to Stand Count, and that such an act poses "a serious threat to the ability of the institution and its staff to maintain proper accountability of the inmate population at all times," and that "[t]his action could lead to other serious incidents such as escape." *Id.* at 25-26. Consequently, plaintiff received sanctions that included disallowance of good conduct time, disciplinary segregation, loss of commissary and telephone privileges, as well as impounding of personal property. *Id.* at 26.

Incident Report # 1807232

On December 3, 2008, at about 1:30 p.m., Correctional Counselor McDonald was conducting rounds in the SHU when plaintiff Gray stated, "I am attempting to get a disciplinary transfer and know how to do it . . . I'm gonna fuck up one of you all." Defs.' Ex. 1-J, (Doc. No. 24-5 at 4). The DHO

concluded that plaintiff committed the prohibited act of Threatening Another with Bodily Harm or Any Other Offense, and that plaintiff's behavior "is egregious and prevents that person from completing his assignments without constantly watching behind himself. . . In the past, when inmates have threatened others, they have carried out such threats. Predicting proclivity for violence is difficult and dangerous." *Id.* at 4-5. Consequently, plaintiff received sanctions that included disallowance of good conduct time, disciplinary segregation, loss of visiting, commissary, recreation and telephone privileges, as well as impounding of personal property. *Id.*

Incident Report # 1807201

On December 3, 2008, at approximately 10:25 a.m, while housed in the SHU, plaintiff Grayed destroyed and damaged a sprinkler head in one of the cells. *See* Defs.' Ex. 1-K, (Doc. No. 24-5 at 13). The DHO found that plaintiff committed the prohibited act of Destroying, Altering, or Damaging Property Valued in Excess of $100.00 or Altering Life Safety Devices Regardless of Value, and that Gray interfered with the efficient operation of the institution and with the institution's ability to provide a safe and orderly environment for inmates and staff alike. *Id.* at 13-14. The DHO further noted that Gray presents an extensive disciplinary history, as well as a continued inability to

abide by institution rule. *Id.* at 14. Consequently, plaintiff received sanctions that included disallowance of good conduct time, disciplinary segregation, monetary restitution, loss of commissary, recreation and telephone privileges, as well as impounding of personal property. *Id.* at 13-14.

Incident Report # 1810938

On December 14, 2008, plaintiff Gray failed to stand for count when ordered by a staff member to do so. *See* Defs.' Ex 1-C, (Doc. No. 24-3 at 1). As such, the DHO concluded that plaintiff committed the prohibited act of Failing to Stand Count. *Id.* Consequently, plaintiff received sanctions that included disallowance of good conduct time, disciplinary segregation, loss of commissary and visiting privileges, as well as impounding of personal property. *Id.*

SMU Referral and Designation

On February 23, 2009, at approximately 11:15 a.m., defendant Fujimoto provided notice to plaintiff Gray that he was being referred for a hearing before a Hearing Administrator to determine whether he should be designated to a SMU. *See* Defs.' Ex. 1-B, (Doc. No. 24-2 at 23-26). This referral for SMU designation was made because (1) Gray had a history of serious and disruptive disciplinary infractions, and (2) Gray had participated in activity

such that greater management of his interaction with other persons was necessary to ensure the safety, security, or orderly operation of Bureau facilities, or protection of the public. *See* Defs.' Ex. 1-B, (Doc. No. 24-2 at 24).

Plaintiff's hearing on the referral for designation to a SMU was held on February 25, 2009. At the hearing, plaintiff made the following statement: "The night is beautiful, so are the faces of my people. The stars are beautiful so are the rest of my people. Beautiful also is the sun." Defs.' Ex. 1-B, (Doc. No. 24-2 at 18).

The Hearing Administrator found that plaintiff met the following criteria for designation to the SMU: (1) Gray had a history of serious and disruptive disciplinary infractions, and (2) Gray had participated in activity such that greater management of his interaction with other persons was necessary to ensure the safety, security, or orderly operation of Bureau facilities, or protection of the public. *Id.* at 19. The Hearing Administrator explained that:

> " . . . Gray incurred numerous prior disciplinary infractions throughout his period of confinement. Most significantly, Gray cumulatively incurred a total of twelve disciplinary infractions, eight of which were of high severity series for Interfering with Security Devices (Code 208), Making Sexual Proposals or Threats to Another (Code 206), numerous infractions for Engaging in Sexual Acts (Code 205), and Threatening Bodily Harm (Code 203). On an ancillary note, Gray also incurred several infractions of the moderate severity series for Failing to Stand Count (Code 320), and Disruptive Conduct (Code 399).

In pertinent part, Gray presents an unabashed and contumacious behavior whereby he self-stimulates his penis or self-gratifies himself in the presence of staff, damaged a sprinkler head in the Special Housing Unit (SHU), stated to staff "I'm gonna fuck up on of you all.",and presents a history of staring and following female staff. As evidenced by his extensive disciplinary history, his actions are considered predacious and menacing.

. . . His Continued inability to abide by institution rule, and animus interaction with others, substantiates and well-validates his placement in the SMU."

*Id.* at 20.

Defendant Fujimoto

Defendant Georgine Fujimoto has been employed as a unit manager for the United States Department of Justice, Federal Bureau of Prisons ("BOP"), at USP Canaan since September 2008. *See* Georgine Fujimoto Decl., Defs.' Ex. 1; (Doc. No. 24-2 at ¶1). In her position as unit manager, she is responsible for (1) directing and managing a housing unit, (2) planning, developing and implementing individual programs tailored to meet the particular needs of the inmates in the unit, and (3) all unit team actions which includes developing a total treatment program[7] designed to meet the needs

---

[7] A total treatment program is designed to improve an inmate's behavior patterns from a social, educational, and professional standpoint. (Doc. No. 24-2 at ¶4). The total treatment program recognizes that an inmate's interaction with staff could set the tone for an inmate's willingness to prepare himself for his release back into the mainstream of society. *Id.*

of each inmate in the unit, and handling all adjustment problems, including recommendations for the forfeiture and withholding of good time. *Id.* at ¶3. Unit managers also have direct and frequent contact with inmates for the purpose of communication, administrative matters, and to provide feedback on inmate behavior and their receptiveness to treatment programs. *Id.* at ¶4. Generally, unit managers contact with inmates is to attempt to change an inmate's undesirable attitudes and behavior patterns towards socially acceptable behavior and, to establish positive correctional attitudes, because it is recognized that unit managers have frequent opportunities to influence the attitudes and behavior of inmates by informal guidance and counseling. *Id.*

Defendant Fujimoto was plaintiff Gray's unit manager during his incarceration at USP Canaan. *Id.* at ¶2. As such, defendant Fujimoto had professional encounters with plaintiff Gray while he was incarcerated at USP Canaan. *Id.*

Defendant Fujimoto first met plaintiff Gray in September 2008, when Gray had already been assigned to a cell in the disciplinary segregation wing of USP Canaan's SHU. *Id.* at ¶9. Defendant Fujimoto specifically recalls the first time she met Gray because, although she was speaking with Gray's

cellmate, she observed Gray open his trousers and pull out his penis, at which time Gray's cellmate told defendant Fujimoto that Gray wanted to speak with her. *Id.* At that point, defendant Fujimoto told Gray, "You gotta put that away if you want to talk with me." *Id.* Gray complied with the aforementioned order of defendant Fujimoto, and Gray did not expose himself to her again. *Id.*

After that incident, defendant Fujimoto eventually spoke with Gray and learned that Gray was a medium inmate who felt he should be transferred to a medium-security facility. *Id.* Gray was confined at USP Canaan due to a disciplinary transfer from a medium security prison, namely the Federal Correctional Complex in Beaumont, Texas. *Id.* While confined at the Federal Correctional Complex in Beaumont, Gray received incident reports for: (1) interfering with security devices, (2) insolence, (3) making sexual proposals or threats, and (4) engaging in a sexual act. *Id.* After learning Gray's history, defendant Fujimoto told Gray that he must stop masturbating or he would never be returned to a medium-security facility. *Id.* at ¶10. After defendant Fujimoto told Gray that he must stop masturbating, Gray replied that he intended to ceaselessly masturbate in the presence of female staff because "that is what I do in jail." *Id.* In addition, Gray confided in defendant Fujimoto that he sincerely believed female staff members enjoyed watching him

masturbate and that female staff members should take his actions as a compliment. *Id.*

On November 7, 2008, defendant Fujimoto tried to get Gray interested in a program for sex offenders that is conducted at a high-security BOP facility in Arizona. *Id.* at ¶12. Defendant Fujimoto told Gray that he had engaged in sexually-offensive behavior. *Id.* Defendant Fujimoto did not call Gray a "sex offender" and a "dangerous sexual predator" on November 7, 2008, as alleged in his Amended Complaint.[8] *Id.* At all times material to this action, Defendant Fujimoto was aware that Gray was not in prison for a sex-related crime. *Id.* Furthermore, defendant Fujimoto did not "respond hysterically" to any of Gray's actions. *Id.*

Gray was transferred to USP Lewisburg's SMU because his persistent misconduct required greater supervision than USP Canaan could provide. *Id.* at ¶6. Gray qualified himself for the SMU program through his behavior, namely his growing disciplinary record and his deluded belief that he was not acting inappropriately. *Id.* at ¶17. Defendant Fujimoto did not arrange to have

---

[8] Defendant Fujimoto does not consider Gray to be a sex offender, but rather, an indecent-exposure bully, or a "gunslinger", which is a term that prison staff frequently uses in referring to inmates who masturbate in the presence of female staff. *Id.* at ¶12.

Gray transferred to the SMU. *Id.* at ¶20. Rather, the referral decision was made by the DHO, the Regional Director recommended that Gray be transferred, and the Chief of the BOP's Designations and Sentence Computation Center ultimately approved the transfer. *Id.* Gray's behavior was the reason for the transfer. *Id.*

While Gray was in the receiving and discharge ("R&D") area at USP Canaan, just before he was transferred to USP Lewisburg, defendant Fujimoto did speak to Gray. *Id.* at ¶21. When Defendant Fujimoto spoke to Gray as he awaited his transfer to USP Lewisburg, she did tell him that she had good friends at USP Lewisburg and that the Lewisburg staff would take good care of him. *Id.* Defendant Fujimoto did not intend the aforementioned statements that she made to Gray to communicate a threat to him. *Id.* Defendant Fujimoto did not "taunt" Gray concerning his transfer to USP Lewisburg. *Id.*

Finally, defendant Fujimoto did not mishandle or misdirect any of Gray's administrative remedies. *Id.* at ¶12. Defendant Fujimoto never threatened Gray for filing an administrative remedy. *Id.*

**C.      Defendant Fujimoto**

**1.      Retaliation Claim**

Plaintiff claims that defendant Fujimoto had him transferred to the SMU at USP Lewisburg because of his grievance activities. In order to prevail on a retaliation claim, a prisoner- plaintiff must first prove that "the conduct which led to the alleged retaliation was constitutionally protected." *Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001)*. Next, the plaintiff must show that he suffered some "adverse action" at the hands of prison officials. *Id.* A prisoner-plaintiff satisfies this requirement by demonstrating that the action "was sufficient to deter a person of ordinary firmness from exercising his rights." *Allah v. Seiverling, 229 F.3d 220, 225 (3d Cir. 2000)*. Once the plaintiff has met these first two threshold tests, he must prove "a causal link between the exercise of his constitutional rights and the adverse action taken against him." *Rauser, 241 F.3d at 333*. If the plaintiff has shown that his exercise of a constitutional right was a "substantial and motivating factor" in the challenged decision, the burden then shifts to defendant prison officials who may still prevail by proving by a preponderance of the evidence that they would have made the same decision absent the protected conduct for reasons reasonably related to penological interest. *Id.* at 334. At the summary

judgment stage, the plaintiff need only meet his burden of producing evidence from which a reasonable jury could conclude that the adverse action was taken in retaliation for the exercise of his protected rights. If the plaintiff produces evidence from which a reasonable jury could conclude that the exercise of his right was a "substantial and motivating factor" in defendants' actions, the ultimate question of causation must be decided by the fact-finder.

Here, even assuming the first two threshold tests have been met, the plaintiff has produced absolutely no evidence that his grievance activities at USP Canaan was a substantial and motivating factor for his transfer to the SMU at USP Lewisburg. Moreover, such a finding is wholly unsupported by the evidence in the record. Here, the uncontroverted evidence submitted by defendant Fujimoto demonstrates that plaintiff was transferred to the SMU at USP Lewisburg due to his own misconduct and his lengthy history of disciplinary violations. Specifically, plaintiff Gray had received twelve disciplinary infractions, and eight of those were of the high severity series in terms of the nature of the offenses. Moreover, the Hearing Administrator found that Gray's continued inability to abide by institution rule, and animus interaction with others, substantiated and well-validated his placement in the SMU. Accordingly, the record is replete with evidence that shows the change

in custody status was brought about by plaintiff's own misconduct, which is a legitimate penological reason for transferring him to the SMU at USP Lewisburg. Because no disputed issue of fact exists with regard to the establishment of causal connection, the court recommends that summary judgment be granted in favor of defendant Fujimoto on plaintiff's retaliation claim.

### 2. Classification Claim

Defendant Fujimoto also seeks summary judgment on plaintiff's claim that he does meet the criteria for placement in the SMU program at USP Lewisburg. The court agrees. The Supreme Court has stated that "[t]he touchstone of due process is protection of the individual against arbitrary action of government," *Wolff v. McDonnell*, 418 U.S. 539, 558 (1974) (citing *Dent v. West Virginia*, 129 U.S. 114, 123 (1889)), and entails both substantive and procedural protections. *County of Sacramento v. Lewis*, 523 U.S. 833, 845- 46 (1998). It has long been held, however, that an inmate has no constitutionally protected liberty interests in his place of confinement, transfer, or classification, or in the particular modes or features of confinement. *Sandin v. Conner*, 515 U.S. 472, 483 (1995); *see also Brown v. Hogsten*, No. 06-0262, 2006 U.S. Dist. LEXIS 49133, at *4 (M.D. Pa. July 19, 2006) ("The

Constitution does not confer inmates a liberty interest in retaining or receiving any particular security or custody status."); *Oden v. Caison*, 892 F. Supp. 111, 111 (E.D. Pa. 1995) (same). The Third Circuit explained , "[a]s long as the conditions or degree of confinement to which the prisoner is subjected is within the sentence imposed upon him and is not otherwise violative of the Constitution, the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight." *Asquith v. Dep't of Corrs.*, 186 F.3d 407, 410 (3d Cir. 1999) (internal citation omitted). Accordingly, defendant Fujimoto is entitled to summary judgment on this claim because the plaintiff does not have a constitutional right to a custody level or place of confinement.[9]

## IV. RECOMMENDATION[10]

For the reasons elaborated above, **IT IS RECOMMENDED THAT**:

**(1)** Defendants' motion to dismiss or, in the alternative, for summary

---

[9] The court notes that, as explained above, it was the plaintiff's own actions, primarily his lengthy disciplinary history throughout his incarceration, that qualified him for placement in the SMU.

[10] For the convenience of the reader, the court has attached copies of unpublished opinions cited within this document.

judgment, (Doc. No. 22), be **GRANTED,** and

**(2)** the Clerk of Court be directed to mark this case **CLOSED**.


s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States Magistrate Judge**

**DATE:** January 14, 2011

O:\shared\REPORTS\2009 Reports\09-2082-01.wpd